UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DERRON P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:21-cv-00116-SEB-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

Plaintiff Derron P. ("Derron") has appealed the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his February 21, 2018, application for supplemental security income ("SSI"), alleging a disability onset date of August 5, 2017. R. (Dkt. 11) at 15. The application was initially denied on July 2, 2018, R. at 83, and upon reconsideration on August 30, 2018. R. at 99. An administrative law judge conducted a hearing on July 2, 2020, R. at 32-60, resulting in a decision on July 30, 2020, that Derron was not disabled and thus not entitled to receive SSI. R. at 12-23. The Appeals Council denied review on November 18, 2020. R. at 1.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana uses only first names and last initials of non-governmental parties in Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

On January 14, 2021, Derron timely filed this civil action seeking judicial review of the decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Dkt. 1.

For the reasons explained below, we order a remand of this case.

### Background[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 416.920(a)(4)(i) to (v), in concluding that Derron was not entitled to SSI.  R. at 23.  Specifically, the ALJ found as follows:

- At Step One, Derron had not engaged in substantial gainful activity[4] since February 21, 2018, the application date.[5]  R. at 17.

- At Step Two, he had "the following severe impairment: chronic obstructive pulmonary disease (COPD)."  *Id*. (citation omitted).

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R. at 19.

- After Step Three but before Step Four, Derron had the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR 416.967(c) except the claimant is limited to no exposure to extreme heat or humidity and only occasional exposure to pulmonary irritants.  The claimant is limited to no climbing ladders, ropes or scaffolds.  The claimant is limited to no work at unprotected heights."  R. at 19.

---

[3] The discussion of Derron's medical history and treatment includes sensitive and otherwise confidential medical information that has been thoroughly detailed in the ALJ's decision and the parties' respective briefs.  To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e*., involves significant physical or mental activities) and gainful (*i.e*., work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date.  20 C.F.R. § 416.335.

- At Step Four, relying on the testimony of the vocational expert (the "VE") and considering Derron's RFC, he was incapable of performing his past relevant work as a mail handler. R. at 22.

- At Step Five, relying on the VE's testimony and in light of Derron's age (56 years of age), education (at least a high school graduate), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed in representative occupations, such as an agricultural packer, hand packager, and warehouse worker. R. at 22-23.

## **Standard of Review**

Upon review of the Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## **Analysis**

Derron presents three issues for review: whether (1) the ALJ provided an adequate explanation of her RFC conclusions that included a function-by-function analysis, (2) the ALJ's subjective symptoms evaluation followed Social Security Ruling ("SSR") 16-3p, and (3) the ALJ's Step Three conclusions were explained adequately and supported by a

medical expert's assessment. We will address these issues as necessary to resolve the appeal below:

### RFC

Derron contends that the ALJ provided only a perfunctory explanation of her conclusion that he could perform a limited range of medium exertional work. Dkt. 14 at 15. "The mandated predicate function-by-function assessment, along with the necessary reasoning behind such an assessment are missing." *Id.* Derron also contends that the ALJ did not discuss a consultative examiner's observations including objective clinical findings, nor did the ALJ explain how the examiner's observations supported that Derron could lift and carry up to fifty pounds and stand and walk at least six hours in an eight-hour workday. *Id.* at 15-16.

An RFC is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[6]; SSR 96-8p). The combined effect of all the claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *1, provides guidance that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

---

[6] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases may reference the section pertaining to disability insurance benefits, such as in *Craft*, which cites to 20 C.F.R. § 404.1545. 539 F.3d at 676. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.945. We will not usually reference the parallel section but will take care to detail any substantive differences applicable to the case.

function-by-function basis . . . ." "Only after that may [an] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately . . . ." *Id.* at *5. However, the Seventh Circuit has joined its "sister courts . . . in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (citing *Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003)). The court explained that the role of reviewing courts is to verify that the ALJ's decision is supported by substantial evidence and addresses significant evidence and the functional limitations that evidence supports. *Jeske*, 955 F.3d at 596.

Our review convinces us that the ALJ fell short of meeting even the Seventh Circuit's relaxed articulation standard. The ALJ ruled that the prior administrative medical findings of the state agency reviewing consultants—that Derron did not have a severe impairment—were "not persuasive." R. at 21. The ALJ concluded that Derron was able to perform a range of medium exertional work as defined in the regulations limited only by non-exertional limitations. By definition, "[m]edium work involves

5

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). Light work, by contrast:

> . . . involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*Id.* at 416.967(b). Had the ALJ determined that Derron was capable of only light exertional work, based on his having attained advanced age[7] during the period at issue, R. at 22, as well as his education, work history, and RFC, a finding of "[d]isabled" would be required under the Medical-Vocational Guidelines for the period under review. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.06 (advanced age, high school graduate or more but does not provide for direct entry into skilled work, and semiskilled past work with skills not transferable), *compared with id.*, Rule 203.15 (same vocational factors but at the medium exertional level); *see also* R. at 53-54 (The VE testified that Derron does not have transferable skills from his past relevant work as a mail handler with the United States Postal Service because "processing of mail in . . . government service is a bit different than in other locations.").

However, the ALJ stopped short of explaining the basis for her conclusion that Derron could lift and carry between 25 and 50 pounds. To allow meaningful judicial review, the ALJ must explain how dispositive issues have been resolved. *See, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002). Derron testified that he could "hardly"

---

[7] The SSA "consider[s] that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work."

6

lift anything anymore, requiring his neighbor to carry out his trash for him due to his shortness of breath due to his COPD as well as back pain.[8]  R. at 38-39.

The ALJ described the record as "significant for COPD," R. at 20, noting that Derron relied on a combination of inhalers and had visited hospital rooms for further breathing treatments, injections, and steroids.  *Id.*  On June 25, 2019, Derron began regular treatment with a pulmonologist to address his complaints of "dyspnea on exertion."  R. at 597.  On September 26, 2019, he was reportedly using a bronchodilator daily and his rescue inhaler two to three times a day.  R. at 618.

As noted by the ALJ, at the request of the state agency Derron attended a consultative examination with Diane Elrod, M.D., on June 4, 2018, to have his claim evaluated.  R. at 20.  The ALJ explained:

> Dr. Elrod noted that the claimant was short of breath during the exam[,] and it was difficult for him to walk.  She further noted that he had severe right[-]sided pain with every movement he made.  Pulmonary function testing revealed moderate obstruction.  However, the examiner noted to interpret [the pulmonary function study] with caution as it was [the result of a] poor session quality.

R. at 20 (citations omitted).

---

[8] At Step Two, the ALJ noted that there was no diagnostic imaging of Derron's spine, and he had only a "conservative treatment history for his back." R. at 18.  However, rather than concluding that the record did not establish a relevant medically determinable impairment, such that his symptoms would not be considered when determining his RFC, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *3, the ALJ concluded that there was a medically determinable impairment based apparently on clinical signs showing decreased range of motion, tenderness, and spasms in the lumbar spine as well as positive straight-leg raising tests and an unstable gait, but that the impairment was not severe. R. at 17-18.  Accordingly, the ALJ was required to consider any functional limitations resulting from Derron's back impairment in combination with his other impairments.

As Derron points out, the ALJ did not address all of Dr. Elrod's findings. The Seventh Circuit has held that "when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re[]viewing court some idea of why she rejected it." *Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018) (citing *Clifford v. Apfel*, 227 F.3d 863, 873-74 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). In that decision, the court imposed a duty on the ALJ to explain the basis for discrediting any "observations" of the consultative examiner, concluding that the examiner's findings were not consistent with the postural limitations in the ALJ's RFC finding. *Spicher*, 898 F.3d at 758-59 (citing *Clifford*, 227 F.3d at 873-74).

In the case before us, Derron was 65 inches tall and weighed a mere 117.2 lbs. R. at 583. His gait was unstable. R. at 585. He was constantly dizzy and something (likely a cane)[9] was required for stability and to ease bilateral leg pain. R. at 585. Derron was not able to walk on bilateral heels and bilateral toes. R. at 585. He could not stand on either leg alone but could perform a partial squat maneuver with difficulty. R. at 585. Derron's motor strength was reduced at 3/5 in his upper extremities. R. at 586. He also had an "abnormal" Romberg test.[10] *Id*. Dr. Elrod's impression was that Derron was "very frail," he had difficulty walking, and he got "short of breath during the exam." *Id*.

---

[9] The record is not completely clear what that "something" references, but Dr. Elrod recorded in the history of present complaint section that Derron reported using a cane for dizziness. R. at 583.

[10] A Romberg test is diagnostic tool used to assess if an individual has an issue with balance that is potentially related to his central nervous system. Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21769-vertigo (last visited January 12, 2022).

The objective data recorded by Dr. Elrod that Derron had an abnormal Romberg test and decreased muscle strength in his upper extremities as well as her observations that he had an unsteady gait and became short of breath with the minimal exertion necessary to complete the testing all indicate that he would surely have problems lifting and carrying 25 to 50 pounds on a regular basis. However, the ALJ did not address Dr. Elrod's findings nor did she explain any apparent inconsistencies compared to other relevant findings. Having failed to explain her reasoning for rejecting the conflicting relevant, significant evidence vis-a-vis her RFC finding, requires remand for further consideration and explication of her findings, in particular regarding the functions of lifting and carrying.

### Other Arguments

Given our order of remand, we decline to examine Derron's other arguments. However, we encourage the ALJ to evaluate his subjective symptoms along with her reconsideration of his RFC. Derron's Step Three argument, which was undeveloped as to how the record evidence supported any listing, can be reasserted and further elaborated upon remand to show that he meets the requirements of a listing supported by the record.

## Conclusion and Order

For the reasons explained above, the ALJ's decision is REVERSED and the case is REMANDED for further consideration consistent with this order under sentence four of 42 U.S.C. § 404(g). Final judgment shall issue by separate order. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 1/21/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com